UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TIFFANY MATTESON and
ELIZABETH STEDGE,

                    Plaintiffs,          **No. 6:18-cv-06772-MAT**
                                         **DECISION AND ORDER**

        -vs-

TOWN OF MACEDON CODE ENFORCEMENT
OFFICER RONALD HALL, TOWN OF
MACEDON DOG CONTROL OFFICER MARK
PLYTER and TOWN OF MACEDON POLICE
CHIEF JOHN COLELLA,

                    Defendants.
_____


I.   **Introduction**

     Tiffany Matteson ("Matteson") and Elizabeth Stedge ("Stedge")
(collectively, "Plaintiffs"), represented by counsel, commenced
this action pursuant to 42 U.S.C § 1983 and 42 U.S.C § 1988
alleging violations of their Fourth Amendment rights under the
United States Constitution as well as various State law causes of
action against Town of Macedon Code Enforcement Officer
Ronald Hall ("Hall"), Town of Macedon Dog Control Officer Mark
Plyter ("Plyter"), and Town of Macedon Police Chief John Colella
("Colella") (collectively, "Defendants"). Before the Court is
Defendants' Motion to Dismiss the Amended Complaint. For the
reasons set forth below, the motion is granted in part and denied
in part.

II.  **Factual Background**

                              -1-

The following factual summary is drawn from the Amended Complaint (Docket No. 3) and the exhibits, including an affidavit signed by Stedge, attached thereto (Docket Nos. 3-4, 3-5 & 3-6).

This action arises from Hall's fatal shooting of Matteson's nine year-old male American Staffordshire Terrier/Lab mixed breed dog, "Sniper," on August 9, 2016, outside her residence. At about 10:30 a.m. on that day, Hall arrived on the property on which Matteson's trailer was located in the Town of Macedon in Wayne County, New York. Hall, as the Town of Macedon's code enforcement officer, had been informed that there were renovations being made to one of the trailers on Matteson's property and presumably that was why he was there on the day in question. When Hall arrived, Matteson was across the street and a few residences down from her trailer doing laundry at a friend's home. Stedge, Matteson's brother's girlfriend, was watching television in Matteson's trailer. Sniper was inside the trailer with Stedge. Stedge did not hear anyone knock or say hello, but Sniper got up, nudged open the screen door, and went down the ramp off the trailer. Stedge could see Hall through the glass door; she saw him draw his gun but then lost sight of him. As she reached the open door, Hall could see her and could have seen she was going to retrieve the dog, who was now "running around in a circle of pain" and "not going towards Officer Hall at this point." As Stedge was attempting to bring Sniper back inside Matteson's trailer, Hall fired the second shot at Sniper.

Matteson, who was still across the street at her friend's home, heard both gunshots. After the first shot, she looked out the window and saw Sniper running underneath a camper and Stedge standing outside crying. Sniper then went back into Matteson's trailer; Stedge followed him inside to comfort him as he laid in a corner, dying. Stedge recalls that it was about an hour before he passed away.

Hall then verbally berated Matteson, Stedge, and other onlookers. Hall insisted that Sniper should have been on leash, even though he had been inside. Hall never indicated that Sniper was going after him or being aggressive but just that he should have been on leash. Hall never appeared to have been in fear of Sniper. He told Matteson and Stedge that "a pit bull was coming towards him and that he did what he had to do." Docket No. 3-4, ¶ 8. Hall refused to allow Matteson to seek veterinary care for her fatally wounded dog.

Sniper had never bitten anyone or displayed any sort of aggression towards anyone. No one, including none of the neighbors in Matteson's trailer park community, ever had any issues with him. The day prior to his death, someone had come to Matteson's door and he had barked but then very quickly allowed that person to pet him.

Plyter served Matteson with an appearance ticket, dated August 10, 2017, for allowing a dog to run at large and harboring an unlicensed dog. On August 16, 2017, Plyter issued another ticket to

Matteson for harboring an unlicensed dog.

A necropsy performed on Sniper by a veterinarian at Cornell University revealed no evidence of contact wounds or gunpowder stippling to suggest that Hall fired his weapon at point blank or close range. The veterinarian also opined that Sniper did not die instantly but rather had a post-injury survival time of 30 to 60 minutes.

Defendants tried to cover up Hall's crime of aggravated animal cruelty by falsely informing Wayne County District Attorney Richard Healy, Esq. ("D.A. Healy") that there were no witnesses to the shooting when, in fact, Stedge was attempting to provide a statement to law enforcement.

The first cause of action in the Amended Complaint asserts violations of Matteson's Fourth Amendment rights against Hall for unlawfully depriving Matteson of her property (i.e., Sniper). *See* Am. Compl. ¶¶ 36-43. The second cause of action, brought by Stedge, asserts an excessive use of force in violation of the Fourth Amendment based on Hall's decision to shoot Sniper a second time while the animal was in close proximity to Stedge. *See id.* ¶¶ 44-52. The third cause of action, by Matteson, alleges malicious prosecution on the part of Plyter. *See id.* ¶¶ 53-59. The fourth cause of action, by Matteson, asserts that Colella violated her substantive and procedural due process rights by making false statements to Healy in an attempt to thwart any criminal

prosecution of Hall. *See id.* ¶¶ 60-64. Plaintiffs also demand punitive damages against Hall. *See id.* ¶¶ 65-67.     In lieu of answering the Amended Complaint, Defendants filed a Motion to Dismiss (Docket No. 9) along with a Memorandum of Law in Support ("Defs.' MOL") (Docket No. 9-1). Plaintiffs filed a Memorandum of Law in Opposition ("Pls.' MOL") (Docket No. 10). Defendants filed a Reply (Docket No. 12). The motion was submitted without oral argument on January 24, 2019. Docket No. 13.

## III. Rule 12(b)(6) Standard

The function of a motion to dismiss pursuant to Rule 12(b)(6) is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (internal quotation marks omitted). In order "[t]o survive a motion to dismiss under [Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When assessing a claim's plausibility, the district court must "assume [the] veracity" of all well-pleaded factual allegations contained in the complaint, *Iqbal*, 556 U.S. at 679, and draw every reasonable inference in favor of the plaintiff, *Zinermon v. Burch*, 494 U.S. 113, 118 (1990). However, the allegations must

consist of more than mere labels or a "formulaic recitation of the elements of a cause of action[.]" *Iqbal*, 556 U.S. at 679. Bare legal conclusions are "not entitled to the assumption of truth." *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556. The Supreme Court has explained that "plausibility" is not the same as "probability," but it nevertheless "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). In other words, factual allegations that are "merely consistent with" a defendant's liability "stop[] short of the line between possibility and plausibility. . . ." *Id.* (quoting *Twombly*, 550 U.S. at 557).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted).

## IV. Discussion

### A. The Claims Against Colella Individually and the State Law Claims Are Dismissed

Plaintiffs do not contest Defendants' argument that claims asserted against Colella in the fourth cause of action should be dismissed. *See* Pls.' MOL, p. 1 of 18.[1] Therefore, Colella is dismissed as a defendant from this action.

As Defendants point out, Plaintiffs have failed to address Defendants' arguments in support of dismissal of their State law claims. Accordingly, the Court deems the State law claims to be abandoned and dismisses them on that basis. See *Molinari v. Bloomberg*, 564 F.3d 587, 609 n. 15 (2d Cir. 2009) ("In short, [appellants] make no argument [in any of their appellate briefs] whatsoever regarding their claims under subdivisions (e) or (f) or New York City Charter § 38. Accordingly, such claims are deemed abandoned.") (citation omitted); *see also Anti-Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n.11 (S.D.N.Y. 1997) (stating that "the failure to provide argument on a point at issue constitutes abandonment of the issue"), *aff'd*, 130 F.3d 1101 (2d Cir. 1997).

**B.    The Amended Complaint Fails to State a Claim for Malicious Prosecution**

Plaintiffs' third cause of action asserts a claim of malicious prosecution against Plyter based on his issuance of various appearance tickets to Matteson under sections of the N.Y.

---

[1]    Pls.' MOL is unpaginated; accordingly, the Court refers to the page numbers automatically assigned by CM/ECF.

Agriculture and Markets Law pertaining to "Dog I.D. and Control."
To prevail on a § 1983 claim for malicious prosecution, a plaintiff
is required to show "a seizure or other 'perversion of proper legal
procedures' implicating [her] personal liberty and privacy
interests under the Fourth Amendment." *Washington v. Cty. of
Rockland*, 373 F.3d 310, 316 (2d Cir. 2004) (quoting *Singer v.
Fulton Cty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995)). In addition,
the plaintiff must show that the criminal proceedings were
"initiated or continued" against her, "with malice and without
probable cause, and were terminated in [her] favor." *Lanning v.
City of Glens Falls*, 908 F.3d 19, 24 (2d Cir. 2018) (citing
*Mitchell v. City of N.Y.*, 841 F.3d 72, 79 (2d Cir. 2016); other
citation omitted). Thus, there are four required elements of a
malicious prosecution claim under § 1983: (1) the initiation or
continuation of a criminal proceeding; (2) termination of the
proceeding in the plaintiff's favor; (3) lack of probable cause for
commencing the proceeding; and (4) actual malice as a motivation
for the defendants' actions. *Murphy v. Lynn*, 118 F.3d 938, 947 (2d
Cir. 1997). Defendants argue that Plaintiffs cannot fulfill any of
the required elements. The Court will address Defendants' favorable
termination argument first.

In *Lanning*, the Second Circuit "clarif[ied] that federal law
defines the elements of a § 1983 malicious prosecution claim, and
that a State's tort law serves only as a source of persuasive

authority rather than binding precedent in defining these
elements." 908 F.3d at 25. The Second Circuit held that "[its]
prior decisions requiring affirmative indications of innocence to
establish 'favorable termination' . . . continue to govern § 1983
malicious prosecution claims, regardless of developments in New
York State malicious prosecution law." *Id.*; *see also id.* at 24-25
(rejecting argument based on New York Court of Appeals' case law
that the "the favorable termination element is satisfied so long as
'the final termination of the criminal proceeding is not
inconsistent with the Plaintiff's innocence'") (quotation and
citation omitted).

Here, the Amended Complaint alleges only that the charges
against Matteson were dismissed. Am. Compl. ¶ 55. Defendants argue
that this is insufficient under *Lanning*, which requires an
affirmative indication of the plaintiff's innocence. *See* Defs.' MOL
(Docket No. 9-1); *see also* Reply (Docket No. 12) at 2 (citing
*Lanning*, *supra*). The Court agrees. *See Lanning*, 908 F.3d at 28
(holding that plaintiff "did not adequately plead that the
termination of the prosecutions against him affirmatively indicated
his innocence" where he "alleged that the charges against him 'were
dismissed' at some point after a jury trial, without specifying how
or on what grounds" because "[t]his vague allegation is consistent
with dismissal on any number of procedural or jurisdictional
grounds, all of which fail to affirmatively indicate innocence").

In their opposition to Defendants' motion, Plaintiffs have submitted a letter attached as an exhibit to their memorandum of law. The letter, from D.A. Healy to Hon. Ronald Weinstein ("the Healy Letter"), states that "'[t]he People hereby decline prosecution in the interest of justice. Furthermore, Ms. Matteson testified before the grand jury regarding the above infractions and as a result received immunity pursuant to C.P.L. 190.40." Docket No. 10-1 at 1 of 1. Plaintiffs also have put forth several new allegations, not stated in the Amended Complaint, including that D.A. Healy believed that Hall should be held criminally liable and that Matteson was required to appear in court on four occasions in connection with the tickets issued to her. *See* Pls.' MOL at 12-14.

Defendants respond that a plaintiff cannot oppose a motion to dismiss by submitting documents that are not referenced in or integral to the complaint. Reply at 2 & n. 6 (citation omitted). Moreover, Defendants contend, Plaintiffs' argument that the letter is somehow "indicative of innocence" is not the correct standard under *Lanning*. *Id.* at 2-3 & n. 8 (citation omitted). With regard to the newly asserted allegations, Defendants argue that they cannot be considered. *Id.* at 3 & n. 9 (citations omitted). In any event, Defendants argue, nothing in the Healy Letter affirmatively indicates Matteson's innocence. *Id.* & nn. 3-4 (citations omitted).

The Court agrees that the Healy Letter and the unsworn factual allegations set out in Plaintiffs' memorandum of law are not

properly before it for consideration. *See Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 122–23 (S.D.N.Y. 2010) ("Courts in this Circuit have made clear that a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss.") (citing, *inter alia*, *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (holding that plaintiff could not amend her complaint through a legal memorandum filed in opposition to a motion to dismiss); *SBICE, LLC v. MGN, LLC*, No. 08 Civ. 3164, 2008 WL 4682152, at *1 n. 1 (S.D.N.Y. Oct. 20, 2008) (considering only the complaint, exhibits attached to the complaint, and documents integral to the complaint where plaintiff attached extrinsic evidence to its opposition to defendants' motion to dismiss without attempting to amend its complaint).

Even if the Court considered the Healy Letter, the result is the same. "[W]here a dismissal in the interest of justice 'leaves the question of guilt or innocence unanswered [,] . . . it cannot provide the favorable termination required as the basis for [that] claim.'" *See Lanning*, 908 F.3d at 28-29 (quoting *Hygh v. Jacobs*, 961 F.2d 359, 368 (2d Cir. 1992)). Here, the Healy Letter "leaves the question of guilt or innocence unanswered." *See Hygh*, 961 F.2d at 368 ("The prosecution of Hygh was dismissed in the interest of justice pursuant to N.Y. CRIM. PROC. LAW § 170.40 (McKinney 1982). . . . Consequently, as a matter of law, it cannot provide the

-11-

favorable termination required as the basis for a claim of malicious prosecution.") (citations omitted).

Because Plaintiffs have not plausibly alleged the necessary element of "favorable termination," they cannot state a claim for malicious prosecution. Accordingly, the Court dismisses the third cause of action against Plyter without reaching the other grounds for dismissal urged by Defendants.

### C. **Stedge Lacks Capacity to Sue**

Defendants have moved to dismiss the excessive force claim brought by Stedge against Hall on the grounds that she lacks "standing" to sue due to her minor age and that she has not plausibly alleged that Hall's use of force was directed at her.

Although Defendants phrase this argument as a lack of standing and resultant absence of Article III jurisdiction, the cases cited by Defendants discuss lack of the capacity to sue. The distinction between standing and capacity is "not inconsequential," and therefore, as an initial matter, it is necessary to properly characterize Defendants' argument. *Manhattan Review LLC v. Yun*, No. 16CIV0102LAKJCF, 2016 WL 6330474, at *3 (S.D.N.Y. Aug. 15, 2016) (citations omitted), *report and recommendation adopted sub nom. Manhattan Review LLC v. Tracy Yun*, No. 16-CV-0102 (LAK), 2016 WL 6330409 (S.D.N.Y. Oct. 26, 2016). Although a plaintiff must "allege facts that affirmatively and plausibly suggest that it has standing," *Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140,

145 (2d Cir. 2011), she need not allege capacity to sue, except when required to show that the court has jurisdiction, FED. R. CIV. P. 9(a)(1)(A). Instead, courts generally treat lack of capacity as an affirmative defense. *Wiwa v. Royal Dutch Petroleum Co.*, Nos. 96 Civ. 8386, 01 Civ. 1909, 02 Civ. 7618, 2009 WL 464946, at *4 n. 15 (citing *Vishipco Line v. Chase Manhattan Bank, N.A.*, 660 F.2d 854, 861 n. 3 (2d Cir. 1981); *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 257 F Supp.2d 717, 727 n. 13 (S.D.N.Y. 2003)). According to Fed. R. Civ. P. 9(a)(2), it must be raised "by a specific denial." Since "[a] denial of capacity creates an issue of fact, 5A Charles Alan Wright *et al.*, Federal Practice and Procedure § 1294 (3d ed. 2016), . . . a complaint is only properly dismissed for failure to state a claim if the lack of capacity is apparent on its face," *Wiwa*, 2009 WL 464946, at *4 (citing *In re K-Dur Antitrust Litigation*, 338 F. Supp.2d 517, 540 (D. N.J. 2004); *Klebanow v. New York Produce Exchange*, 344 F.2d 294, 296 n. 1 (2d Cir. 1965) (noting that lack of capacity may be raised in [Fed. R. Civ. P.] 12(b)(6) motion "when the defect appears upon the face of the complaint")).

"A minor or incompetent person normally lacks the capacity to bring suit for himself." *Berrios v. New York City Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009) (citing N.Y. C.P.L.R. § 1201 (McKinney 1997); Fed. R. Civ. P. 17(b)(1) (stating that the capacity of an individual claim owner to sue is determined by "the law of the individual's domicile"). Under New York State law, a minor or

"infant" is "a person who has not attained the age of eighteen years." N.Y. C.P.L.R. § 105(j).

Here, the Court finds that the alleged lack of a capacity, which is premised on Stedge's age, is apparent from a document that Plaintiffs chose to attach to the Amended Complaint. According to the Affidavit signed by Stedge on September 2, 2016, Stedge was 15 years-old at that time. *See* Exhibit A the Amended Complaint, Docket No. 3-4, ¶ 1. If Stedge was 15 years-old on September 2, 2016, it does not appear possible for her to have reached age 18 on October 24, 2018, the date the original Complaint was filed. In addition, Defendants have made a "specific negative averment," *In re K-Dur Antitrust Litigation*, 338 F. Supp.2d at 540, about Stedge's lack of capacity in their motion to dismiss in lieu of answer. In response, Plaintiffs have merely alleged in their brief that Stedge "is now 18." Docket No. 10, p. 17 of 18. But that is not the issue.

The Court agrees that Stedge lacks capacity to sue under New York State law. Accordingly, her claims should be dismissed. However, the dismissal should be without prejudice. *See Johns v. Cty. of San Diego*, 114 F.3d 874, 878 (9th Cir. 1997) (district court erred in dismissing complaint with prejudice based on plaintiff's lack of capacity; "the complaint should have been dismissed without prejudice . . . so that Casey may bring this action on his own when he reaches the age of majority") (citing *Osei-Afriyie v. Medical College*, 937 F.2d 876, 883 (3d Cir. 1991)). The Court does not reach

Defendants' other arguments regarding the plausibility of Stedge's excessive force claim. *See All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 87 (2d Cir. 2006) (holding that district court erred in failing to resolve dispute concerning the plaintiffs' Article III standing before ruling that salt was not a pollutant within the meaning of the Clean Water Act).

### D. The Amended Complaint Has Alleged a Plausible Fourth Amendment Claim on Behalf of Matteson

The Amended Complaint alleges that Hall's actions in fatally shooting her dog, Sniper, constituted an unreasonable seizure in violation of the Fourth Amendment. The Fourth Amendment, made applicable to the States through the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. Const. Amend. IV. In *Carroll v. Cty. of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013) (*per curiam*), the Second Circuit stated that "[a]s a number of [its] sister circuits have already concluded, the unreasonable killing of a companion animal constitutes an unconstitutional 'seizure' of personal property under the Fourth Amendment." *Id.* at 651 (citing *Altman v. City of High Point*, 330 F.3d 194, 204–05 (4th Cir. 2003); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 211 (3d Cir. 2001); *Fuller v. Vines*, 36 F.3d 65, 68 (9th Cir. 1994), *overruled on other grounds by Robinson v. Solano Cnty.*, 278 F.3d 1007 (9th Cir. 2002); *Lesher*

*v. Reed*, 12 F.3d 148, 151 (8th Cir. 1994)). The Court finds, and Defendants do not dispute, that Plaintiffs have plausibly alleged that Matteson's dog was her personal property subject to protection under the Fourth Amendment.

Defendants, however, contend that Matteson forfeited any possessory interest in her dog at the time he was shot by Hall, because she was not at her residence when the shooting occurred and that her dog let itself outside and was unsupervised. The cases cited by Defendants do not help their cause. First, *Hansen v. Black*, 872 F.3d 554 (8th Cir. 2017), *cert. denied*, 138 S. Ct. 2010, 201 L. Ed. 2d 252 (2018), did not hold that an owner's possessory interest in her dog is automatically exterminated if the dog happens to roam away from her residence. Rather, the Eighth Circuit quoted the Fourth Circuit's *Altman* decision, which simply noted that "'[a] dog owner's protected property interest *wanes* if her pet escapes. While we do not denigrate the possessory interest a dog owner has in her pet, we do conclude that dog owners forfeit many of these possessory interests when they allow their dogs to run at large, unleashed, uncontrolled and unsupervised. . . .'" *Hansen*, 872 F.3d at 559 (quoting *Altman*, 330 F.3d at 205-06; emphasis supplied).

As an initial matter, *Hansen* involved the plaintiff dog owner's appeal of a summary judgment motion in favor of the defendant trooper, not a motion to dismiss. In that case, the defendant trooper had responded to 911 calls about "a large dog running free

-16-

on a high speed interstate, causing traffic to swerve between lanes and drive onto the shoulder." 872 F.3d at 559. Here, in contrast, the Amended Complaint alleges that Matteson's dog had gotten loose *only moments before* Hall fired at him, while the dog was still on Matteson's property. The Eighth Circuit took care to distinguish the cases cited by the plaintiff dog owner because none "involved an unleashed, unsupervised dogs that was risking public safety on a busy interstate highway and would not respond to numerous attempts at a safe, harmless seizure." *Hansen*, 872 F.3d at 559 (*contrasting with Andrews v. City of W. Branch*, 454 F.3d 914, 918 (8th Cir. 2006) (an officer looking for a large black dog loose in a residential neighborhood shot another dog that was harmlessly urinating in a fenced backyard, with its owner standing a few feet away); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 209, 211-12 (3d Cir. 2001) (an officer repeatedly shot a pet "without any provocation and with knowledge that it belonged to the family who lived in the adjacent house and was available to take custody")).

The Court turns next to whether Plaintiffs have plausibly alleged that the seizure by Hall of Sniper was reasonable. "Where, as here, a seizure is made without a warrant, it is 'presumptively unreasonable.'" *Azurdia v. City of New York*, No. 18-CV-04189-ARR-PK, 2019 WL 1406647, at *6 (E.D.N.Y. Mar. 28, 2019)(quoting *Branson v. Price*, No. 13-cv-03090-REB-NYW, 2015 WL 5562174, at *5 (D. Colo. Sept. 21, 2015) (citing *United States v. Place*, 462 U.S. 696, 701

(1983)). Nevertheless, a warrantless seizure may be reasonable if "the totality of the circumstances justified [the] particular sort of . . . seizure." *Carroll*, 712 F.3d at 651 (quoting *Tennessee v. Garner*, 471 U.S. 1, 9 (1985); alteration in original)). Courts are to balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests'" implicated by the particular situation. *Tennessee*, 471 U.S. at 8 (quoting *Place*, 462 U.S. at 703). The reasonableness inquiry "is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation[,]" *Graham v. Connor*, 490 U.S. 386, 397 (1989), and without judging them "with the 20/20 vision of hindsight," *id.* at 396.

When conducting the reasonableness analysis in a case involving the fatal shooting of a companion animal, "there are several specific considerations that the court must keep in mind. First, it is well-established that the killing of a pet dog constitutes 'a severe intrusion given the emotional attachment between a dog and an owner.'" Azurdia, 2019 WL 1406647, at *7 (quoting *Carroll*, 712 F.3d at 651; citing *Kendall v. Olsen*, 237 F. Supp.3d 1156, 1167 (D. Utah 2017) ("[C]ourts have recognized that most dog owners think of dogs solely in terms of an emotional relationship, rather than a property relationship.") (internal quotation marks and citation

-18-

omitted); *Altman*, 330 F.3d at 205 ("Dogs have aptly been labeled 'Man's Best Friend,' and certainly the bond between a dog owner and his pet can be strong and enduring.")). Second, and on the other hand, a local government has a "significant" interest in the safety of its citizenry and law enforcement personnel. *Id.*

The Court is cognizant that "dogs may represent a serious risk to the safety of officers and the general public, and in some circumstances, it may be 'reasonable for an officer to shoot a dog that he believes poses a threat to his safety or the safety of the community.'" *Id.* (quoting *Carroll*, 712 F.3d at 651). However, "when a dog is seized—and especially, as here, where it is killed, not merely injured or detained—the intrusion on the owner weighs heavily in favor of finding the seizure unreasonable and constitutional." *Kendall*, 237 F. Supp.3d at 1167; *see also Branson*, 2015 WL 5562174, at *5 ("Incidents involving a dog that 'has not actually attacked a person' are closer cases and can demonstrate that the deadly force was unreasonable.") (citing Altman, 330 F.3d at 206) (cited in *Azurdia*, 2019 WL 1406647, at *7.

Here, after balancing the interests discussed above and taking all of the well-pleaded allegations in the Amended Complaint as true, the Court finds that it clearly states a claim for an unreasonable seizure in violation of Matteson's Fourth Amendment rights. Under the circumstances as alleged by Plaintiffs, it was not reasonable for Hall to believe that Sniper posed a danger to himself

or the public at large when Hall fired the first shot or the second shot. Notably, Hall did not have a warrant to be on Matteson's property; Sniper had just come out of Matteson's home and was still on Matteson's property and not running loose around the neighborhood; Hall could see Stedge through the window inside the trailer as he drew his gun to shoot Sniper the first time; Stedge had come outside and was moving towards Sniper to restrain him when Hall fired the second shot; and Sniper was running around in circles, not at Hall, when Hall fired the second shot.

The fact that Sniper may have been approaching Hall does not necessarily require the conclusion that he was displaying behaviors that could reasonably be considered threatening. This is especially so when read in the context of Plaintiffs' other allegations about Sniper's temperament, including that he had never displayed aggressive behavior toward anyone and, the day before, had greeted a visitor to the residence in an appropriate manner without incident.

Defendants assert that Sniper's breed (American Staffordshire Terrier[2]/Lab mix) made him inherently dangerous, making it reasonable for Hall to shoot first and ask questions later. While some courts have considered a dog's breed to be relevant to the

---

[2]
"An American Staffordshire Terrier is commonly referred to as a pit bull." *Branson*, 2015 WL 5562174, at *3 (citing Hannah K. Pratt, CANINE PROFILING: DOES BREED-SPECIFIC LEGISLATION TAKE A BITE OUT OF CANINE CRIME, 108 Penn St. L. Rev. 855, 863 (2004)).

Fourth Amendment analysis, *e.g.*, *Branson*, 2015 WL 5562174, at *5
(citing *Altman*, 330 F.3d at 206), it is just one of the factors to
be considered when the assessing the reasonableness of a  seizure,
*id.* (compiling case law and listing the following factors: whether
the dog was "at-large" or whether the owner was available and
willing to assert control over the dog; whether there was time to
find an alternative solution gain control of the dog; whether non-
lethal means were available to control the dog; and whether the dog
posed a danger to the officer or the public). However, "a breed's
reputation for aggression does not, on its own, justify a fatal
shooting[.]" *Azurdia*, 2019 WL 1406647, at *8 (citing *Branson*, 2015
WL 5562174, at *6 ("Even though[ ] [the defendant] reasonably
perceived the dog to be a dangerous breed, that fact alone does not
justify a seizure in the form of shooting the dog. Rather, the other
relevant factors also must be considered.")). Here, as discussed
above, all of the other relevant factors weigh against a finding of
reasonableness. Matteson's dog was not "at-large"; Stedge, the
person who was looking after Sniper while Matteson was out, was
available and willing to assert control over the dog; there was time
to find an alterative solution gain control of the dog; non-lethal
means were available to control the dog, especially after the first
shot; and, taking the Amended Complaint's allegations as true, the
dog did not pose a danger to the officer or the public.

Furthermore, Defendants have not come close to demonstrating

that Hall is entitled to qualified immunity at this stage of the litigation. Though this defense should ordinarily be resolved as "early in the proceedings" as possible, *Saucier v. Katz*, 533 U.S. 194, 200 (2001), an officer is not entitled to qualified immunity if the facts alleged by the plaintiffs fail to provide him with a reasonable basis for believing that fatal force was necessary. At the time of Sniper's death, the law clearly established that the fatal seizure of a pet dog without justification constituted a Fourth Amendment violation. *Carroll*, 712 F.3d at 651. Based on Plaintiffs' version of the moments leading up to Sniper's shooting, which is all this Court may consider on a Rule 12(b)(6) motion, a reasonable officer in Hall's position would have known that shooting him was unlawful. Accordingly, at this juncture, the Court declines to award qualified immunity to Hall.

## V. Conclusion

For the reasons discussed above, Defendants' Motion to Dismiss is granted in part and denied in part. The Motion to Dismiss is granted to the extent that Colella and Plyter are dismissed as defendants; the State law causes of action are dismissed without prejudice; the causes of action against Colella and Plyter are dismissed with prejudice; and Stedge's claims are dismissed without prejudice based on her lack of capacity to sue. The Motion to Dismiss is denied as to Hall and as to Matteson's Fourth Amendment claim against him, which may proceed.

Hall is directed to file an answer to the Amended Complaint within twenty (20) days of the date of this Decision and Order. The Clerk of Court is directed to amend the official caption to remove Colella and Plyter as defendants and to remove Stedge as a plaintiff.

**SO ORDERED.**

**s/ Michael A. Telesca**
_____
       HON. MICHAEL A. TELESCA
       United States District Judge

Dated:     May 21, 2019
           Rochester, New York.